UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| THIAN LOK TIO *et al.*, | : | | |
| | : | | |
| Petitioners, | : | Civil Action No.: | 08-0626 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 1 |
| | : | | |
| WASHINGTON HOSPITAL CENTER *et al.*, | : | | |
| | : | | |
| Respondents. | : | | |

## **MEMORANDUM OPINION**

DENYING THE PETITION TO VACATE ARBITRATION AWARD

## **I. INTRODUCTION**

This matter arises from an employment dispute between the petitioners, a physician and his spouse, and the physician's former employer, respondent Washington Hospital Center ("the Hospital"). On November 5, 2004, in a prior action before this court, the court dismissed the petitioners' claims against the Hospital and its fellow respondents on the grounds that those claims were subject to a mandatory arbitration provision in the subject employment contract. The petitioners subsequently submitted their claims to arbitration and a final arbitration award was entered in favor of the respondents. Dissatisfied with the result of the arbitration proceedings, the petitioners initiated this action seeking vacatur of the arbitration award. Because the petitioners have not demonstrated that vacatur is appropriate, the court denies their petition to vacate the arbitration award.

## II. FACTUAL & PROCEDURAL BACKGROUND

Petitioner Thian Lok Tio, M.D. ("Dr. Tio") is a former employee of the Hospital,[1] where he held the position of Director of Endoscopy in the Section of Gastroenterology. *Tio v. Wash. Hosp. Ctr.*, 2004 WL 2663149, at *1 (D.D.C. Nov. 5, 2004).[2] Prior to commencing his employment at the Hospital, Dr. Tio and the Hospital entered into a written employment agreement (the "Agreement"). *See id.*; Respts' Opp'n to Petrs' Mot. to Vacate ("Respts' Opp'n") at 2. The Agreement contained an arbitration clause, which provided, in relevant part, that "any controversy, dispute or disagreement arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration." Compl., Ex. 1 ¶ 12, *Tio v. Wash. Hosp. Ctr.*, No. 04-701 (D.D.C. Apr. 28, 2004). The Agreement provided for the costs of arbitration to be divided equally between the parties. *See id.*

On April 18, 2003, the Hospital terminated Dr. Tio's employment. *Tio*, 2004 WL 2663149, at *1. Dr. Tio and his wife, petitioner Ting Song S. Tio ("Mrs. Tio"), subsequently filed suit against the respondents in the D.C. Superior Court, alleging: (1) tortious breach of contract; (2) tortious interference with an employment contract; (3) denial of common-law good faith and fair dealing; (4) tortious interference with third-party physician-patient contracts; (5) defamation/slander; (6) intentional infliction of emotional distress ("IIED"); (7) fraud/misrepresentation; (8) antitrust violations; (9) wrongful termination; and (10) loss of

---

[1] Respondent Medstar Health, Inc. is the corporate parent of respondent Washington Hospital Center Corporation. Pet. ¶ 2.

[2] The parties in this action were previously before this court in a separate action involving the same underlying claims. *See generally* Compl., *Tio v. Wash. Hosp. Ctr.*, No. 04-701 (D.D.C. Apr. 28, 2004). The court draws the background facts of this case, in part, from the description of relevant facts set forth in its November 5, 2004 memorandum opinion in the prior case.

consortium.³ *Id.* After removing the action to this court, the defendants moved to dismiss the complaint and compel submission of the claims to arbitration. *Id.*

On November 5, 2004, the court granted the defendants' motion. *Id.* at *7. In reaching its decision, the court held that the Agreement, including the arbitration provision, was valid and enforceable. *Id.* at *6. The court also concluded that the arbitration provision encompassed all of the claims asserted by Dr. Tio and that Mrs. Tio's claims were entirely derivative of and dependent on Dr. Tio's claims and therefore subject to mandatory arbitration as well. *Id.* at *7.

The petitioners subsequently initiated an arbitration proceeding before Judicial Arbitration & Mediation Services, Inc. ("JAMS"), asserting all of the claims raised in their complaint. Pet. ¶ 13; Respts' Opp'n at 3. During a preliminary hearing, and without objection, the arbitrator narrowed the parties to those within the scope of the Agreement between Dr. Tio and the Hospital. Respts' Opp'n, Ex. E ("Final Award") at 2. On January 25, 2007, after briefing and oral argument, the arbitrator granted in part the Hospital's motion for summary judgment and dismissed all of the claims except Dr. Tio's claims for breach of contract and wrongful termination on the basis of discrimination. *Id.*

Beginning in late August 2007, the arbitrator conducted a hearing that spanned eight days. *Id.* at 3. At the hearing, the parties presented "diametrically opposed" versions of the events at issue. *Id.* at 3 n.1. After considering the cumulative weight of all admissible evidence, including testimony adduced during the hearings, *id.*, the arbitrator summarized his factual

---

³      In the petitioners' initial action, Dr. Tio's wife was identified as Ting Soan S. Tio. Compl. at 1, *Tio*, 2004 WL 2663149. The defendants in that action were the Hospital, Medstar Health, Inc., and nine employees and officers of the Hospital (hereinafter referred to collectively as "the defendants"). *See generally id.*

findings, in relevant part, as follows:

> At some time in 2001, [Dr. Tio] initiated an employment application process at the Cedars-Sinai Hospital in California . . . [and continued] to pursue outside employment opportunities throughout 2002. In addition to seeking alternative employment, [Dr. Tio] curtailed his work at [the Hospital]. He began to travel extensively, attending conferences, speaking at engagements, and taking international trips and vacations. [Dr. Tio's] productivity, measured in terms of patient revenues and responsiveness to operational needs, plummeted. On or about April 23, 2003, [the Hospital] . . . terminated [Dr. Tio's] employment for cause, citing primarily [Dr. Tio's] lack of leadership, decreased attention to his duties, and decline in productivity.

*Id.* at 4.

According to the arbitrator, Dr. Tio established at the hearing that he is a member of a protected class and that he suffered an adverse employment action when he was terminated from the hospital. *Id.* Nonetheless, the arbitrator held that to prevail on his claim of discrimination, which formed the basis of Dr. Tio's breach of contract and wrongful termination claims,[4] Dr. Tio also needed to establish that he was treated disparately from other employees on the basis of his race and national origin. *Id.* at 5. Although Dr. Tio identified various instances in which he believed he had been treated disparately from other physicians at the Hospital, the arbitrator ultimately concluded that there was insufficient evidence to establish disparate treatment. *See id.* at 5-6. Because the Hospital proffered evidence that Dr. Tio's employment had been terminated for cause and because Dr. Tio failed to establish that he suffered discrimination in the course of his employment with and termination from the Hospital, the arbitrator entered a final arbitration award in favor of the Hospital with respect to all claims and allegations. *Id.* at 5-7.

Following the arbitrator's ruling, the petitioners filed this petition to vacate the arbitration

---

[4]  The crux of Dr. Tio's breach of contract claim appears to have been that his termination was without cause and motivated by discriminatory animus. *See generally* Compl., *Tio*, No. 04-701.

4

award. *See generally* Pet. The petitioners contend that the arbitration award should be vacated because their claims were not subject to the Agreement's mandatory arbitration clause, the arbitrator displayed bias and acted in manifest disregard of the law and the fee-splitting provision of the Agreement's arbitration clause violates public policy. *See generally id.*; Petrs' Mem. in Support of Pet. ("Petrs' Mem."). The respondents maintain that the petitioners have presented no valid justification for vacating the final arbitration award. *See generally* Respts' Opp'n. With this matter ripe for disposition, the court turns to the applicable legal standards and the parties' arguments.

### III. ANALYSIS

**A. The Petitioners' Claims Fell Within the Scope of the Arbitration Agreement**

Despite this court's November 5, 2004 ruling, the petitioners contend that their claims should not have been submitted to arbitration because (1) the Agreement involves foreign or interstate commerce and is therefore exempt from the provisions of the Federal Arbitration Act ("FAA") under 9 U.S.C. § 1, (2) Dr. Tio's claim of tortious interference with third-party physician-patient contracts falls outside the scope of the Agreement as the claim arose after the termination of his employment with the Hospital and (3) the Hospital waived its right to invoke the arbitration clause of the Agreement as it did not seek to arbitrate this dispute prior to terminating Dr. Tio's employment. Pet. ¶¶ 5, 9-10. The petitioners raised each of these arguments in the prior proceedings before this court in response to the respondents' motion to

dismiss and compel arbitration.[5]  *See* Pls.' Opp'n to Defs.' Mot. Dismiss & Compel Arbitration, *Tio*, 2004 WL 2663149.  In ruling on the respondents' motion to dismiss, the court considered and rejected each of these arguments.  *See Tio*, 2004 WL 2663149, at *6-7.  Accordingly, for the reasons set forth in this court's Memorandum Opinion dated November 5, 2004, the court holds that the claims at issue in the arbitration proceedings were within the scope of the arbitration provision of the Agreement and properly submitted to the arbitrator for determination.

The court notes that the petitioners did not challenge the November 5, 2004 order dismissing their claims or the court's ruling concerning the scope of the arbitration provision.  Under the FAA, "[a]n appeal may be taken from a final decision with respect to an arbitration that is subject to this title."  9 U.S.C.S. § 16(a)(3).  A "final decision" is a decision "that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 86 (2000) (internal quotations omitted).  The court's November 5, 2004 order granting the Hospital's motion to dismiss and referring the petitioner's claims to arbitration under the arbitration clause of the Agreement constituted a final appealable decision.  *Id.* at 89 (holding that district court order dismissing claims and directing arbitration is final within the meaning of 9 U.S.C. § 16(a)(3), and therefore

---

[5]  Although the petitioners did not specifically argue that the tortious interference claim was outside the scope of the arbitration agreement, they did contest the scope of the agreement generally and the court concluded that each claim, including Dr. Tio's tortious interference claim, was within the scope of the Agreement.  *See Tio*, 2004 WL 2663149, at *6.  Nonetheless, Dr. Tio's tortious interference claim seems to hinge entirely on whether the respondents interfered with his ability to take his "book of business" with him after the termination of his employment at the Hospital, *see* Pet. ¶ 10, and it therefore is within the scope of the arbitration provision because it relates to the Agreement and arose in connection with the termination of the agreement, *see P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (concluding that a claim for tortious interference with third-party contracts fell within the scope of an "arising out of or relating to" arbitration clause when the claim arose in connection with the termination of the parties' contract).

appealable). Therefore, to the extent the petitioners disagree with the court's prior ruling, they failed to timely raise their objections on appeal.[6] *See* FED. R. APP. P. 4(a)(1)(A) (stating that a notice of appeal of a final order must be filed within thirty days after the judgment or order appealed from is entered).

### B. Vacatur of the Arbitration Award Is Not Warranted

### 1. Legal Standard for Vacatur of an Arbitration Award

Judicial review of arbitration awards is extremely limited. *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006). The court "do[es] not sit to hear claims of factual or legal error by an arbitrator" in the manner that an appeals court would review a decision of a lower court. *Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001) (quoting *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178 (D.C. Cir. 1991)). Rather, under the FAA, a court may only vacate an arbitration award

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

---

[6] A party may also seek relief from a final judgment under Federal Rule of Civil Procedure 60(b). Rule 60(b)(6) provides that a court may grant relief from a final judgment for any reason that justifies relief if such relief is requested within a reasonable time. *See* FED. R. CIV. P. 60(b)-(c). Such relief is justified only in exceptional or extraordinary circumstances. *Ackermann v. United States*, 340 U.S. 193, 199-202 (1950). "What constitutes a 'reasonable time' depends upon the facts of each case, taking into consideration the interests of finality, the reasons for the delay, the practicability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties." *Bowie v. Maddox*, 677 F. Supp. 2d 276, 278 (D.D.C. 2010) (quoting *Osborne v. Homeside Lending, Inc.*, 379 F.3d 277, 283 (5th Cir. 2004)). Although the petitioners did not expressly request relief from the final judgment that was entered on November 5, 2004, the court notes the circumstances of this case are neither exceptional nor extraordinary and thus would not justify relief from the final judgment. Moreover, the petitioners' are attempting to relitigate issues that were previously resolved by the court forty-one months after entry of a final judgment disposing of their claims. It is apparent that the petitioners have only raised these issues again because they are dissatisfied with the result of the arbitration. The court therefore concludes that the petitioners' delay was not reasonable.

7

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The party challenging an arbitration award bears the burden of demonstrating that one of the statutory grounds set forth in the FAA exists. *See Al-Haribi v. Citibank, N.A.*, 85 F.3d 680, 682 (D.C. Cir. 1996).

In addition to the statutory grounds for vacatur, this Circuit has also stated that vacatur of an arbitration award is permitted if the arbitrator acted in "manifest disregard of the law,"[7] *Al Haribi v. Citibank, N.A.*, 85 F.3d 680, 682 (D.C. Cir. 1996) (quoting *Kanuth*, 949 F.2d at 1178), or if the award is "contrary to 'some explicit public policy' that is 'well defined and dominant' and ascertained 'by reference to the laws or legal precedents,'" *LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702, 706 (D.C. Cir. 2001) (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1486 (D.C. Cir. 1997)). To vacate an arbitration award on the basis of an arbitrator's manifest

---

[7] The Supreme Court recently held that the provisions set forth in 9 U.S.C. § 10 "provide the FAA's exclusive grounds for expedited vacatur." *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). In light of this ruling, it is unclear whether the "manifest disregard" standard remains a viable basis for relief. *Compare, e.g.*, *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (recognizing that manifest disregard of the law is no longer an "independent, nonstatutory ground" for setting aside an arbitration award) *with Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1281 (9th Cir. 2009) (concluding that manifest disregard of the law "remains a valid ground for vacatur of an arbitration award under § 10(a)(4) of the Federal Arbitration Act"). Neither the Supreme Court nor this Circuit has resolved this issue. *See Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1768 n.3 (2010) (declining to decide whether the "manifest disregard" doctrine continues to survive as an independent ground for judicial review of an arbitration award); *Regnery Publ'g Inc. v. Miniter*, 368 F. App'x 148 (D.C. Cir. 2010) (assuming without deciding that the "manifest disregard" doctrine survives *Hall Street*). Because the petitioners in this case have not established the arbitrator's "manifest disregard," *see infra* Part III.B.3, the court need not decide the viability of the "manifest disregard" standard to resolve this case.

disregard of the law, the court "must find that (1) the arbitrator[] knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrator[] was well defined, explicit, and clearly applicable to the case." *Id.* (quoting *DiRussa v. Dean Witter Reynolds, Inc*., 121 F.3d 818, 821 (2d Cir. 1997)).

### 2. The Petitioners Have Not Established a Statutory Basis for Vacating the Arbitration Award

The petitioners argue that vacatur is appropriate under the FAA on two grounds: evident partiality and misconduct.[8] Specifically, the petitioners contend that the arbitrator demonstrated partiality by making various rulings that were adverse to their claims and that the arbitrator committed misconduct by excluding certain testimony during the arbitration hearing. *See generally* Pet.; Petrs' Mem. at 25-26. The respondents contend that the court should reject the petitioners' assertion of evident partiality because they have not produced any evidence to support their contentions, the purported instances of partiality are belied by the record and the conduct complained of, even if true, does not rise to the level of evident partiality. *See* Respts' Opp'n at 12-15. The respondents further contend that the petitioners have failed to demonstrate misconduct, as they have not shown that the excluded testimony was material and pertinent or that they were denied a fair and full hearing as a result of the arbitrator's conduct. *See id.* at 15-17.

The court turns first to the petitioners' claim of evident partiality. A party challenging an

---

[8] The petitioners also seem to argue that vacatur is appropriate under 9 U.S.C. § 10(a)(4) on the ground that the arbitrator exceeded his authority, but this argument appears to be grounded in the petitioners' contention that some of their claims were outside the scope of the arbitration provision of the Agreement. Pet. ¶¶ 9-10; Petrs' Mem. at 22-23. As previously discussed, however, the court already concluded in its November 5, 2004 ruling that all of the petitioners' claims were subject to the arbitration provision. *See supra* Part III.A. Therefore, the arbitrator did not exceed his authority by resolving all of the petitioners' claims.

9

arbitration award because of evident partiality bears a "heavy" burden to establish "specific facts that indicate improper motives on the part of an arbitrator." *Al-Haribi*, 85 F.3d at 683 (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir. 1993)). "The alleged partiality must be direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *Id.* (quoting *Peoples Sec. Life Ins.*, 991 F.2d at 146). "[A] mere appearance of bias is insufficient to demonstrate evident partiality." *Alston v. UBS Fin. Servs., Inc.*, 2006 WL 20516, at *3 (D.D.C. Jan. 2, 2006).

The petitioners contend that the arbitrator exhibited evident partiality in numerous procedural, substantive and evidentiary rulings during the course of the arbitration proceedings. *See generally* Pet. But rather than identifying specific facts that indicate improper motives on the part of the arbitrator, the petitioners rely primarily on speculative and conclusory allegations to support their claim. The petitioners do not support their assertion of evident partiality with a single citation to the record of the arbitration proceedings or any other evidence setting forth the specific facts necessary to support their position. *See generally* Pet.; Petrs' Mem. Indeed, the petitioners' claim of evident partiality rests almost exclusively on their dissatisfaction with the arbitrator's rulings that "eliminate[d] and restrict[ed] the claims, the parties, the number of witness [sic], [and] the timing and order of presentation of Petitioner's case in chief." Pet. ¶ 15. These rulings, however, do not demonstrate evident partiality.[9] *See Alston*, 2006 WL 20516, at *3-4 (rejecting the petitioners' contention that unfavorable procedural and evidentiary rulings by

---

[9] At any rate, on the record before the court, there does not seem to be anything unusual or inappropriate about the arbitrator's rulings on these issues. *See Fairchild & Co. v. Richmond, F. & P. R. Co.*, 516 F. Supp. 1305, 1313 (D.D.C. 1981) (recognizing that "since the advantages of arbitration are speed and informality, an arbitrator should be expected to act affirmatively to simplify and expedite the proceedings before him").

an arbitrator amounted to evident partiality). Although a series of unfavorable rulings by the arbitrator may produce an appearance of bias in the eyes of the unsuccessful party, it does not justify vacating the arbitration award.

The petitioners also contend that the arbitrator's ultimate conclusion and decision to enter the final arbitration award in favor of the respondents demonstrates his evident partiality. *See* Pet. ¶ 12; Petrs' Mem. at 24-25. It would appear that the petitioners base this contention on their belief that the arbitrator inappropriately credited the testimony of witnesses offered by the respondents, even though "[t]hey were contradicted on cross-examination." Petrs' Mem. at 25. The petitioners, however, have not identified specific testimony that they believe was unworthy of credence and point to no specific facts that indicate improper motives on the part of the arbitrator in concluding that the weight of the evidence favored the defendant. *See generally* Pet.; Petrs' Mem. Indeed, the arbitrator specifically noted in the final arbitration award that the parties had offered conflicting versions of the circumstances. Final Award at 3. The arbitrator further observed that "[w]hile the credibility of witnesses was taken into account . . . a finding that does not comport with a particular party's testimony should not necessarily be deemed a finding that the party lacked credibility. All findings were based upon the cumulative weight of all admissible evidence." *Id.* At any rate, the court is "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact." *Teamsters Local Union No. 61*, 272 F.3d at 604 (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). The court will not second-guess the arbitrator's award simply because the petitioners disagree with his factual conclusions.

Equally unavailing is the petitioners' argument that the arbitration award should be vacated because the arbitrator was guilty of misconduct in failing to hear certain evidence. *See*

11

Pet. ¶ 14; Petrs' Mem. at 25-26. An arbitrator has the broad discretion to control the evidence in an arbitration proceeding, including the authority to refuse to hear evidence that is cumulative or of little relevance. *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 817-18 (D.C. Cir. 2007); *see also Fairchild*, 516 F. Supp. at 1314 (noting that "arbitrators are charged with the duty of determining what evidence is relevant and what is irrelevant"). To justify vacatur on the ground of misconduct, the petitioners must demonstrate that the excluded evidence was pertinent and material to the controversy, 9 U.S.C. § 10(a)(3), and that the exclusion of the evidence deprived the petitioners of a fundamentally fair hearing, *Lessin*, 481 F.3d at 816; *see also Fairchild*, 516 F. Supp. at 1314 (recognizing that evidentiary mistakes do not provide grounds for vacating an arbitration award unless they undermine the fundamental fairness of the proceedings). Thus, "every failure to receive relevant evidence does not constitute misconduct under the [FAA] so as to require vacation of the award." *Fairchild*, 516 F. Supp. at 1314 .

The "pertinent and material" evidence that the petitioners contend was erroneously excluded includes testimony by the wife of a hospitalized patient, testimony of "other patients . . . to show total revenue generated due to high income for specialized procedures," "testimony of other physicians and fellows as to Dr. Tio's leadership in running the unit," and "rebuttal testimony of witness to refute testimony of respondents['] witnesses." Pet. ¶ 14. It is not clear what value this testimony would have added to the proceeding and the petitioners have not attempted to explain how this testimony is pertinent and material to Dr. Tio's claims of breach of contract and discrimination. *See generally* Pet.; Petrs' Mem. But assuming *arguendo* that this testimony would have been relevant to the claims at issue in the hearing, the petitioners' argument fails because they have not established that the excluded evidence was critical to their

case or that the exclusion of the testimony deprived them of a fundamentally fair hearing. *See Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716 (D.C. Cir. 2008) (deferring to the arbitrator's discretion in making evidentiary rulings and noting that the excluded evidence was not critical to the proponent's case).

Accordingly, although the petitioners have demonstrated their dissatisfaction with the result of the arbitration proceeding, they have not established that vacatur is appropriate under 9 U.S.C. § 10(a). Because the petitioners failed to meet their burden, the court declines to vacate the arbitration award on statutory grounds.

### 3. The Petitioners Have Not Shown the Arbitrator's Manifest Disregard of the Law

As an alternate ground for vacatur, the petitioners contend that the arbitrator acted in manifest disregard of the law. Pet. ¶ 14; Petrs' Mem. at 20-21. Although the petitioners' arguments are not entirely clear, their primary contention appears to be that the arbitrator demonstrated manifest disregard of the law by denying the respondents' motion for summary judgment as to the breach of contract claim, but granting the motion as to Dr. Tio's claims of tortious interference, IIED and discrimination.[10] Petrs' Mem. at 21. According to the petitioners, these claims are "so inextricably linked" with the breach of contract claim that it was error to dismiss them. *Id.* In addition, the petitioners contend that the arbitrator acted in manifest disregard of the law when he granted in part the respondents' motion for summary judgment and dismissed "nearly all [of the] petitioners' major claims and all key individual

---

[10] As discussed more fully below, contrary to the petitioners' contention, the arbitrator did *not* grant the respondents' motion for summary judgment on Dr. Tio's discrimination claim. *See infra* Part III.B.3.

13

parties, without oral argument or other hearing,"[11] Pet. ¶ 14, and by failing to set forth his ruling in a detailed written opinion, *id.*

The respondents contend that their motion for summary judgment was "amply supported by record evidence demonstrating that [they were] entitled to summary judgment," Respts' Opp'n at 21, and have identified portions of the record indicating that the arbitrator made a reasoned and deliberate ruling on the motion for summary judgment, *id.* at 21-22; *see also* Pre-Hearing Order No. 1 (setting forth the arbitrator's ruling on the Hospital's motion for summary judgment and noting that the ruling was made "[o]n the basis of the written motions and all responses filed thereto, as well as oral argument"); H'rg Tr. at 81:2-3 (stating that the basis of his ruling on the Hospital's motion for summary judgment "is in Respondent' s 43-page brief [where] they thoroughly briefed these issues").

To demonstrate that the arbitrator acted in manifest disregard of the law, the petitioners must show that the arbitrator knew of a governing legal principle, yet refused to apply it in ruling on their claims. *LaPrade*, 246 F.3d at 706. Because the parties briefed and argued the matters at issue in the respondents' motion for summary judgment, the court assumes *arguendo* that the arbitrator knew the legal principles that govern the petitioners' substantive claims. The

---

[11] To the extent the petitioners take issue with the dismissal of individual parties and the arbitrator's alleged failure to hold a hearing, Pet. ¶ 14, their contentions are refuted by the record. The record indicates that "the arbitrator narrowed the parties to those who were within the scope of the operable agreement to arbitrate contained in [the Agreement]." Final Award at 2. This ruling occurred, without objection by Dr. Tio or the Hospital, during the preliminary hearing. *Id.* Moreover, the arbitrator indicated during the arbitration proceedings that his summary judgment order "was made on the basis of written motions, all the responses filed thereto, *and oral arguments*." Respts' Opp'n, Ex. K ("Hearing Tr.") at 29:5-7 (emphasis added); *see also* Respts' Opp'n, Ex. I ("Pre-Hearing Order No. 1") (noting that the arbitrator's ruling concerning the motion for summary judgment was made "[o]n the basis of the written motions and all responses filed thereto, as well as oral argument made by the parties"). Thus, the record clearly indicates that the arbitrator *did* conduct a hearing.

14

petitioners, however, still must demonstrate that the arbitrator refused to apply these governing legal principles to their claims when he ruled on the respondents' motion for summary judgment.

The petitioners suggest that because there was a genuine issue of material fact related to their breach of contract claim, there must have also been a genuine issue of material fact related to their other claims. Petrs' Mem. at 21. This argument assumes that the petitioners' claims are comprised of overlapping or identical elements, such that they must all survive summary judgment or all be dismissed. Such an assumption is not justified. Indeed, it should be self-evident that the elements of a claim of IIED or tortious interference with a business relationship are not the same as the elements of a claim for breach of contract. *Compare, e.g.*, *Pitt v. Dist. of Columbia*, 491 F.3d 494, 505-06 (D.C. Cir. 2007) (setting forth the elements of an IIED claim under District of Columbia law) *with Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1305 (D.C. Cir. 2002) (setting forth the elements of a tortious interference claim under District of Columbia law) *and Ihebereme v. Capital One, N.A.*, 2010 WL 3118815, at *3 (D.D.C. Aug. 9, 2010) (setting forth the elements of a breach of contract claim). Because the petitioners have offered no evidence to demonstrate that the arbitrator refused to apply or ignored the legal principles governing claims of tortious interference or IIED or any other claim at issue in the proceedings, they have not demonstrated that the arbitrator acted in manifest disregard of the law by granting in part and denying in part the respondents' motion for summary judgment. *See generally* Pet.; Petrs' Mem.

The petitioners also contend that the arbitrator acted in manifest disregard of the law by granting the respondents' motion for summary judgment on Dr. Tio's discrimination claim. *See* Pet. ¶ 14 (contending that "this partial finding [on the motion for summary judgment] is wrong with regard to claims of discrimination where the breach of contract could be based on such

grounds"); Petrs' Mem. at 27 (arguing that the "Petitioners' discrimination claims should not have been cut off by way of Summary Judgment granted to the Respondents"). The record plainly indicates, however, that the arbitrator denied the respondents' motion for summary judgment on this claim. *See* Pre-Hearing Order No. 1 (granting summary judgment to the Hospital and dismissing all claims *except* Dr. Tio's claims of breach of contract and wrongful termination of employment on the basis of discrimination) (emphasis added); Final Award at 2 (stating that "the claims remaining to be heard were Claimant's allegations that Respondent . . . illegally terminated his employment *on the basis of discrimination*") (emphasis added); *id.* at 4-6 (analyzing the merits of Dr. Tio's discrimination claim). Instead, the arbitrator conducted an evidentiary hearing spanning eight days and concluded, based on the evidence presented during the hearing, that the petitioner had not proven his claim of discrimination. Final Award at 6 (stating that the "matter was noteworthy for the complete absence of any evidence of racial bias or other impermissible intent to discriminate against [Dr. Tio]").

The petitioners also suggest that the arbitrator acted in manifest disregard of the law by ruling on the respondents' motion for summary judgment "with a single sentence." Pet. ¶ 14. Although the arbitrator did not render a detailed opinion as to the basis of his rulings on the motion for summary judgment, he was under no obligation to do so. *See Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532 (D.C. Cir. 1989) (holding that arbitrators are not required to explain the basis for their awards); *cf. Kurke*, 454 F.3d at 354-55 (noting that "[e]ven where an explanation for an award is deficient or non-existent, [the court] will confirm it if a justifiable ground for the decision can be inferred from the facts of the case" (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003))).

In this case, the arbitrator indicated during the hearing that the basis of his ruling was the

16

Hospital's forty-three page summary judgment brief. Hearing Tr. at 81:1-7. In their motion for summary judgment, the respondents set forth the material facts as to which there was no genuine dispute and produced deposition testimony and documentary evidence to establish those facts. *See generally* Respts' Opp'n, Ex. Q. For each of the petitioners' claims, the respondents addressed the governing legal standard and identified essential elements that they believed to be unsupported by the record. *Id.* In contrast, the petitioners' opposition to the respondents' motion for summary judgment consisted primarily of conclusory arguments about why summary judgment was not appropriate. *See generally* Respts' Opp'n, Ex. M. The only evidence offered in support of the petitioners' opposition was an affidavit of Dr. Tio. *Id.* This record amply justifies the arbitrator's decision to grant summary judgment to the respondents on some of the petitioners claims, and vacatur is not appropriate simply because the arbitrator ruled on the Hospital's motion for summary judgment without providing a detailed explanation for his ruling.

In sum, even after a liberal reading of the petitioners' arguments, it is clear they have not established that the arbitrator acted in manifest disregard of the law by refusing to apply governing legal principles to their claims. Accordingly, the court declines to vacate the arbitrator's ruling on this basis.

### 4. The Parties' Agreement to Split Arbitration Costs Does Not Justify Vacatur

The petitioners also argue that the arbitration award should be vacated because it is against public policy to require a claimant who is advancing a discrimination claim in an

arbitration proceeding to pay half the cost of the arbitration.[12]  Pet. ¶ 14.  Noting that the petitioners seem to be challenging whether the discrimination claim was properly submitted to arbitration in light of the fee-splitting provision, the respondents contend that the petitioners waived any arguments they may have had concerning the fee-splitting provision by failing to raise the issue until this late stage in the proceedings.  *See* Respts' Opp'n at 9.

In an action to vindicate a public right, this Circuit disfavors placing the financial burden of arbitral proceedings on the party pursuing a claim.  *See Cole*, 105 F.3d at 1485 (holding that employee could not be required to arbitrate discrimination claim as a condition of employment "if the arbitration agreement required him to pay all or part of the arbitrator's fees and expenses").  Nonetheless, a fee-splitting provision does not impede the remedial and deterrent functions of the statutory right "so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (alteration in original) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)).

The petitioners have no basis to challenge the fee-splitting requirement at this stage in the proceeding because there is no evidence that the requirement limited their ability to effectively vindicate Dr. Tio's statutory cause of action.  *LaPrade*, 246 F.3d at 708 (rejecting an employee's challenge to a fee-splitting provision in an arbitration agreement because the employee did not claim "that the possibility of a large assessment arising from arbitration of her claims prevented

---

[12]  In addition to challenging the fee-splitting provision on public policy grounds, the petitioners also contend that it was against public policy for the arbitrator to grant the Hospital's motion for summary judgment as to Dr. Tio's discrimination claim.  *See* Petrs' Mem. at 26-27.  This argument lacks merit because, as explained above, the arbitrator did not grant summary judgment on Dr. Tio's discrimination claim.  *See supra* Part III.B.3.

her from attempting to vindicate her rights" or that "the arbitration panel failed to consider the evidence that she submitted to show she was financially unable to pay any assessment"). Indeed, there is nothing in the record to suggest that the petitioners objected to sharing the burden of the arbitration costs until after the arbitrator entered a final arbitration award in favor of the respondents.[13] Because the petitioners have not demonstrated that the fee-splitting requirement set forth in the arbitration provision of the Agreement violates public policy, their effort to have the arbitration award vacated on this ground fails.

## IV. CONCLUSION

For the foregoing reasons, the court denies the petition to vacate the arbitration award. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of November, 2010.

RICARDO M. URBINA
United States District Judge

---

[13] The petitioners had an opportunity to challenge the fee-splitting provision when their claims were before this court in 2004, yet they failed to object to enforcement of the arbitration provision on this ground. *See generally* Pls.' Opp'n to Defs.' Mot. Dismiss & Compel Arbitration, *Tio*, 2004 WL 2663149. In addition, the petitioners have not argued that they unsuccessfully challenged the fee-splitting provision during the course of the arbitration proceedings. *See generally* Pet.; Petrs' Mem.